## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOEY CHIBUKO** | : | **CIVIL CASE NUMBER** |
| | : | |
| | : | **3:16-cv-02098 (VLB)** |
| **v.** | : | |
| | : | **MARCH 9, 2020** |
| **UNITED STATES OF AMERICA** | : | |
| | : | |

## MEMORANDUM OF DECISION DENYING
## PETITION FOR RELIEF UNDER 28 U.S.C. § 2255 [ECF NOS. 1, 7]

Petitioner Joey Chibuko ("Mr. Chibuko" or "Petitioner") brings this *pro se* petition for habeas relief under 28 U.S.C. § 2255, asserting six ineffective assistance of counsel claims against his counsel who represented him at trial, during sentencing, and on appeal. [ECF Nos. 1, 7]. For the reasons discussed herein, Mr. Chibuko's Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

## Background

On October 6, 2010, a federal grand jury in New Haven returned a nine-count indictment against Mr. Chibuko, charging him with one count of making a false statement in a United States passport application, in violation of 18 U.S.C. § 1542 (Count One); two counts of social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B) (Counts Two and Seven); two counts of identity fraud, in violation of 18 U.S.C. §§ 1028(a)(4) and (b)(1)(A)(ii) (Counts Three and Eight); three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Four, Six and Nine); and one count of making a false claim to United States citizenship, in

violation of 18 U.S.C. § 911 (Count Five). *United States v. Chibuko*, No. 3:10-cr-00204 (VLB), [ECF No. 14] (D. Conn. Oct. 6, 2010).

These charges arose from a long and diverse series of criminal acts committed by Mr. Chibuko over a period of 17 years in Nigeria, California, Massachusetts, Florida, Rhode Island and Connecticut beginning with his fraudulent application for a tourist visa to travel from Nigeria to the United States in 1993 to his arrest in Connecticut in 2010 which resulted in pecuniary harm estimated to be $867,873.36.[1]

On March 4, 1993, Mr. Chibuko entered the United States on a fraudulent tourist visa. Within months of his arrival, Mr. Chibuko fraudulently induced the issuance of a social security card and a series of driver's licenses. On December 31, 1993, feigning love, he fraudulently induced an American citizen to marry him in order to remain in the country. On October 19, 1994, Mr. Chibuko submitted a fraudulent birth certificate in support of his application for legal residency. On October 31, 1996, Mr. Chibuko was arrested by the Oakland Police Department and charged with credit card theft offenses stemming from his use of credit cards issued in the names of California hospital patients whose identities he had stolen. A warranted search of Mr. Chibuko's residence yielded identification documents of others, credit cards in other people's names, social security cards, social security numbers not assigned to Mr. Chibuko, and forged Nigerian identification documents. Notably, as discussed below, these are the types of documents

---

[1] These facts are taken in part from an Order of the Court in Mr. Chibuko's criminal case, from whence this habeas appeal stems, *United States v. Chibuko*, 3:10-cr-00204 (VLB), [ECF No. 135 at 2-6] (D. Conn. Feb. 24, 2015). These facts are reiterated here for completeness.

seized from Mr. Chibuko's home incident to his arrest in Connecticut more than a decade later.

In the face of these charges, Mr. Chibuko fled to Massachusetts in violation of the conditions of his bond, abandoning his wife. Before leaving California Mr. Chibuko fraudulently obtained a California identification card and created a counterfeit social security card both in the name of a person whose identity he had stolen.

Once in Massachusetts Mr. Chibuko embarked upon a new identity theft scheme. He used the fraudulent California identity documents and exploited the affections of another female victim to obtain a position where he again had access to the identification documents of vulnerable individuals as an employee of the Greater Lynn Mental Health and Retardation Association ("Greater Lynn Mental Health"). To conceal his identity and the identity theft he was planning he fraudulently obtained a Massachusetts identification card using a stolen identity and two Massachusetts driver's licenses using stolen identities. One of the identities stolen was that of a developmentally delayed man, Steven Raymond Buckley, who was a resident of Greater Lynn Mental Health.

Mr. Chibuko relocated to Connecticut after committing an assault on his second female victim and violating a restraining order in Massachusetts, for which he was arrested under an assumed name. Beginning in January 2002, he obtained jobs in Connecticut caring for vulnerable victims using multiple stolen identities, fraudulently obtained identity information including social security numbers, birth certificates, licenses, voter registration cards, and a United States

passport.  Mr. Chibuko was terminated from one of these jobs for fraudulently representing that he provided patient services he did not provide.  In addition, he voted and traveled internationally using the fraudulent identification documents.

Mr. Chibuko fraudulently purchased real estate with loans from federally insured financial institutions in Connecticut, Rhode Island and Florida, leased an apartment, obtained unemployment benefits including benefits while he was in detention, and incurred debts, which he did not pay, in the name of the mentally challenged former Massachusetts victim, Steven Raymond Buckley.

Mr. Chibuko used fraudulent identity documents to arrange for a woman to enter the country illegally.  After her arrival in the United States the woman gave birth to children who are American citizens.  At the time of his arrest in Connecticut, law enforcement seized a myriad of fraudulent and counterfeit identity documents.  The large number of identity documents seized together with Mr. Chibuko's prior conduct suggest that Mr. Chibuko was creating and trafficking in counterfeit and stolen identity documents.

On September 9, 2010, Mr. Chibuko was arrested pursuant to a criminal complaint charging him with making a false statement in a United States passport application, in violation of 18 U.S.C. § 1542.  *United States v. Chibuko*, No. 3:10-cr-00204 (VLB), [ECF No. 1] (D. Conn. Sept. 9, 2010).

On October 6, 2010, a federal grand jury returned a nine-count indictment against Mr. Chibuko, charging him with one count of making a false statement in a United States passport application, in violation of 18 U.S.C. §1542; two counts of social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B); two counts of

identity fraud, in violation of 18 U.S.C. §§ 1028(a)(4) and (b)(1)(A)(ii); one count of making a false claim, in violation of 18 U.S.C. § 911; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). *Id.*, [ECF No. 14].

A jury trial commenced on May 19, 2011. *Id.*, [ECF No. 72]. Notwithstanding an abundance of overwhelming unimpeachable evidence to the contrary, Mr. Chibuko persisted in his charade throughout trial proceedings, including at sentencing, insisting that he was the person whose identity he had assumed when he fled Massachusetts, Steven Raymond Buckley.

The defendant's three primary victims appeared and testified to the harm they suffered. They were the disabled resident of Greater Lynn Mental Health whose identity he had stolen and whose credit he all but destroyed, his abandoned wife who traveled from California and testified that she truly believed he married her for love, and his former girlfriend from Massachusetts who he used to secure his position at Greater Lynn Mental Health and whom he assaulted and abandoned. Each testified passionately about the emotional pain and anxiety they suffered as a result of the defendant's conduct while the defendant looked on passively.

On May 24, 2011, the jury returned a unanimous verdict of guilty on all nine counts. *Id.*, [ECF No. 81].

Mr. Chibuko's sentencing hearing was held on December 20, 2011. *Id.*, [ECF No. 108]. The Court imposed the following sentence: concurrent 96-month terms on the counts of making a false statement in a passport application (count one) and identity fraud (counts three and eight); concurrent 36-month terms on

the counts of Social Security fraud (counts two and seven) and making a false claim to U.S. citizenship (count five); and consecutive 24-month terms on each of the three counts of aggravated identity theft (counts four, six, and nine). This resulted in a total sentence of imprisonment of 168 months. Mr. Chibuko was also sentenced to a term of supervised release of three years, and to a $25,000 fine that was to be suspended unless Mr. Chibuko entered the United States illegally after serving his sentence and being deported. *Id.*, [ECF No. 110].

At sentencing, the court calculated Mr. Chibuko's total offense level as 28. This calculation included a base offense level of 6, a fourteen-level enhancement for the loss amount a two-level enhancement for relocation of the fraudulent scheme, a two-level enhancement for a vulnerable victim, a two-level enhancement for an abuse of a position of trust, and a two-level enhancement for obstruction of justice, in that Mr. Chibuko continued his identity charade when being interviewed by the Probation Office prior to sentencing. *Id.*, [ECF No. 115 (Sentencing Transcript) at 1-16].

Mr. Chibuko appealed to the Second Circuit on a number of grounds, including some of the grounds presented in the instant Petition. The Second Circuit reversed the sentence because the Court did not discuss the groupability of two of Mr. Chibuko's offenses. *United States v. Chibuko*, 744 F.3d 259, 267 (2d Cir. 2014). It found the remainder of Mr. Chibuko's numerous claims, both counseled and *pro se*, to be "without merit." *Id.* On remand, the Court considered groupability and resentenced Mr. Chibuko to the same sentence. *United States v. Chibuko*, 3:10-CR-00204 (VLB), [ECF No. 135] (Feb. 24, 2015). On

July 17, 2015, the Second Circuit affirmed the judgment of the Court. *United States v. Chibuko*, 617 F. App'x 82 (2d Cir. 2015).

On December 19, 2016, Mr. Chibuko petitioned pursuant to 18 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. *Chibuko v. United States*, No. 3:16-cv-2098, [ECF No. 1] (D. Conn. Dec. 19, 2016). On December 5, 2017, Mr. Chibuko moved to supplement his Petition to Vacate, Set Aside or Correct Sentence. [ECF No. 7].[2] On February 21, 2018, the Government responded to Mr. Chibuko's original and supplemental petitions. [ECF No. 10]. Mr. Chibuko filed a response to the Government's Opposition on April 11, 2018. [ECF No. 12].

Mr. Chibuko's petition and supplement raise six ineffective assistance of counsel claims: (1) trial counsel was ineffective for failing to object to the impaneling of Juror Number 13, [ECF No. 1 at 2-6]; (2) sentencing counsel was ineffective for failing to object to the obstruction of justice sentencing enhancement, *id.* at 6-11; (3) appellate counsel was ineffective for failing to argue that the sophisticated means enhancement should not have been applied, *id.* at 11-16; (4) trial counsel was ineffective for failing to introduce documents that would show that Mr. Chibuko really was Steven Raymond Buckley, not Joey Chibuko, *id.* at 16-18; (5) trial counsel was ineffective for not calling Mr. Chibuko to testify in his defense, [ECF No. 7 at 4-6]; and (6) sentencing counsel was ineffective for not requesting a below-guidelines range sentence. *Id.* at 6-7.

---

[2] **The Court granted Mr. Chibuko's Motion to Supplement his Petition on February 19, 2019. [ECF No. 14].**

## Legal Standard

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available to rectify three irregularities, namely "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted). The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995).

Claims for ineffective assistance of counsel are analyzed under the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a movant must both allege facts demonstrating that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. As to the first showing, a movant must demonstrate that counsel's performance "amounted to incompetence under 'prevailing professional norms'" rather than demonstrating that the performance "deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). As to the second showing, a movant must demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The *Strickland* standard "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Linstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001)). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97) (internal citations omitted).

The Supreme Court has cautioned courts about the application of the *Strickland* test:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . [T]he standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (holding that lower court had "misapplied" *Strickland*, failed to apply the "strong presumption of competence that *Strickland* mandates," and "overlooked the

constitutionally protected independence of counsel and the wide latitude counsel must have in making tactical decisions.") (internal quotation marks and ellipse omitted).

Furthermore, a habeas petitioner generally may obtain review of his claims only if he has raised them at trial and on direct appeal.  See *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) ("In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review."); *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice."). This rule is rooted in several core concerns: the finality of judgments, the accuracy and integrity of prior proceedings, and the interests of judicial economy. *Id.* As the Second Circuit noted, "collateral review of convictions 'places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh.'" *Id.* (quoting *Keeney v. Tamayo Reyes*, 504 U.S. 1, 7 (1992)).

"Cause under the cause and prejudice test must be something <u>external</u> to the petitioner, something that cannot fairly be attributed to him."  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's

efforts to comply with the . . . procedural rule." *Id.* (quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Any sentencing claim, which is raised for the first time on habeas review, should be denied on the grounds of procedural default. For a court to review a procedurally defaulted claim, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. *See Ciak*, 59 F.3d at 302. A writ of habeas corpus will not be allowed to do service for an appeal. *See Reed v. Farley*, 512 U.S. 339, 354 (1994) ("[w]here the petitioner-whether a state or federal prisoner-failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged . . . violation'") (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).

"A [petition for habeas relief] may not relitigate issues that were raised and considered on direct appeal." *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997) (declining to review plea withdrawal claim that had already been argued on appeal because petitioner was "rehash[ing] the same arguments here."); *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995) ("It is clear that 'section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)). This "so-called mandate rule bars re-litigation of issues already decided on direct appeal." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved

by the appellate court's mandate." *Id.*; *see also United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).

"It is within the district court's discretion to determine whether a hearing is warranted." *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (holding that even where factual issues may exist, Second Circuit precedent permits a "middle road" of deciding disputed facts on the basis of written submissions); s*ee also Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981) (holding that district court was not required to provide a hearing to a *pro se* litigant who did not raise issues sufficient to warrant a hearing).

### Analysis

Mr. Chibuko brings six ineffective assistance of counsel claims arising out of his counsel's actions during trial, sentencing, and appeal. The Court addresses each claim in turn.

## I. Trial Counsel's Failure to Object to the Impaneling of Juror Number 13

Mr. Chibuko first argues that his trial counsel was ineffective for failing to object to the impaneling of Juror No. 13 because this juror "expressed an inability to objectively determine guilt and innocence in cases where the defendant did not testify." [ECF No. 1 at 4]. "At best," according to Mr. Chibuko, "the juror stated that he 'probably' would be able to follow an instruction regarding the defendant's failure to testify." *Id.* Mr. Chibuko claims that his trial counsel's failure to object to this juror "was objectively unreasonable" because the juror in question "was quite clear in his inability of [sic] issue judgment free of prejudice and bias should the Petitioner exercise his constitutional right not to testify." *Id.*

at 5-6. Mr. Chibuko argues that this prejudiced him because his "conviction, at least as to juror number 13, rested not upon the evidence presented at trial, but upon the pre-disposition of the juror to find the Petitioner guilty." *Id.* at 6.

The Government argues that the mandate rule bars the Court from even considering Mr. Chibuko's argument regarding Juror No. 13 because Mr. Chibuko raised this issue on appeal and the Second Circuit found the argument meritless. [ECF No. 10 at 13].

On direct appeal, in his supplemental *pro se* appeal brief, Mr. Chibuko argued that because Juror No. 13 stated that he "would be inclined to 'automatically vote guilty' if [Mr. Chibuko] did not take the stand," the Court "erred in bowing to the government's argument to have [Juror No. 13] seated." Supplemental *Pro Se* Brief of Appellant at 3-6, *United States v. Chibuko*, No. 12-39, [ECF No. 92] (2d Cir. Apr. 4, 2013). In ruling on Mr. Chibuko's appeal, the Second Circuit, as discussed, reversed so that the Court could consider the groupability of Mr. Chibuko's individual sentences. In discussing Mr. Chibuko's other arguments for reversal, the Second Circuit stated: "We have considered <u>all of Chibuko's arguments</u>, both counseled and *pro se*, and except as indicated above, find them to be without merit." *Chibuko*, 744 F.3d at 267 (emphasis added).

Thus, because the Second Circuit already ruled on Mr. Chibuko's first claim for relief regarding Juror No. 13, denying it, the Court must follow the mandate rule and deny this claim as well. *Mui*, 614 F.3d at 53-54 ("In the context of Section 2255 proceedings involving claims of ineffective assistance of counsel, we have

applied the mandate rule to bar claims raised and resolved on direct appeal [including] when the factual predicates of those claims . . . were . . rejected by the appellate court mandate."). In short, Mr. Chibuko's trial counsel could not have been ineffective for failing to object to Juror No. 13 when the Second Circuit found no fault with the impaneling of this juror.

Moreover, as the cases Mr. Chibuko cites in his supplemental *pro se* appeal brief make clear, "once the proper questions have been asked at voir dire, 'the trial court, when impaneling a jury, has broad discretion on challenges therefor.'" *United States v. Torres*, 128 F.3d 38, 44 (2d Cir. 1997) (quoting *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968)). This is because the "determinations of demeanor and credibility . . . are peculiarly within a trial judge's province," and a trial judge is "in the best position to evaluate the juror's demeanor and to determine, by the juror's answers to the judge's questions, whether he could fairly and impartially hear the case and return a verdict based solely on the evidence presented in court." *Id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985) and *United States v. Ploof*, 464 F.2d 116, 118 (2d Cir. 1972)). "There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." *Id.* (quoting *Ploof*, 464 F.2d at 118-19 n.4).

Here, Mr. Chibuko concedes that the "proper questions" were asked at *voir dire* but takes issue with the Court's exercise of discretion in seating Juror No. 13. Because the Court was satisfied that Juror No. 13 could fairly and impartially hear the case and return a verdict based solely on the evidence presented in

court, Mr. Chibuko's argument that his trial counsel was ineffective for failing to object to Juror No. 13's impaneling is meritless. This is especially so given Juror No. 13's assurance, after having the defendant's right not to testify explained to him, that he could be impartial:

> THE COURT: Yes. But if that thought came to your mind, if you're sitting there and you're saying to yourself, you know, why didn't he testify, would the little voice then say to you I can't consider that. The only thing I can consider is whether the evidence presented proves him guilty beyond a reasonable doubt. And can you put that aside, can you assure us that even though you may feel that way, you can put it aside and follow the instruction?
> JUROR #13: Yeah, I think I could. When you put it like that, when you explain it that way, yeah, I think I could.
> [Defense Counsel]: I have no other questions.

*United States v. Chibuko*, No. 3:10-cr-00204 (VLB), [ECF No. 128 (Jury Selection Transcript at 46)].

The Court assumes the jury follows the court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009) ("Juries are presumed to follow their instructions.") (quoting *United States v. Salemeh*, 152 F.3d 88, 116 (2d Cir. 1998)). The Court clearly instructed the juror he could not allow the fact that Mr. Chibuko did not testify to affect his thinking, and there is nothing in the record which suggests the juror did not follow the Court's instruction. The Court therefore assumes he did follow the Court's instructions and therefore there is no basis to challenge seating Juror 13.

In light of Juror No. 13's professed impartiality it was not ineffective for defense counsel to fail to object to his presence on the jury. Even if it were,

seating Juror 13 does not undermine confidence in Chibuko's conviction because there is no basis to suggest he did not follow the court's instruction.

Mr. Chibuko's first ineffective assistance of counsel claim is DENIED.

## II.    Sentencing Counsel's Failure to Object to the Obstruction of Justice Sentencing Enhancement

Mr. Chibuko next asserts that his sentencing counsel should have objected to the obstruction of justice sentencing enhancement because Mr. Chibuko "maintained his version of events as presented at trial when interviewed by the Probation Office" prior to sentencing, which "did not impede sentencing in any way," and because "imposition of the enhancement was for the exact same conduct for which the base offense level had been issued." [ECF No. 1 at 8]. Mr. Chibuko also argues that because he did not testify at trial, "it can not now be stated that the Petitioner committed perjury in testifying, or that maintaining [before the Probation Office] the version of events put forth at trial some how impeded the administration of justice." *Id.* at 10. Because of this, according to Mr. Chibuko, his sentencing counsel was ineffective for failing to object to the obstruction of justice sentencing enhancement, and he was prejudiced "in that he was denied the opportunity to receive a sentence based only upon the fair application of the Sentencing Guidelines." *Id.* at 10-11.

The Government argues, as before, that because Mr. Chibuko's claim regarding the impropriety of the obstruction of justice sentencing enhancement was raised on direct appeal, and denied, the Court must follow the mandate rule and deny Mr. Chibuko's claim. [ECF No. 10 at 13]. The Court agrees with the Government.

In his *pro se* appeal brief, Mr. Chibuko argued that the Court "treated his denial of guilt as tantamount to obstruction of justice," which, according to Mr. Chibuko, was "reversible error under *Dunnigan*." *Pro Se* Supplemental Brief of Appellant at 20, *United States v. Chibuko*, No. 12-39, [ECF No. 73] (2d Cir. Feb. 28, 2013) (citing *United States v. Dunnigan*, 507 U.S. 87 (1993)). As noted, other than the groupability of Mr. Chibuko's claims, all of Mr. Chibuko's issues raised on his direct appeal were denied. "We have considered <u>all of Chibuko's arguments</u>, both counseled and *pro se*, and except as indicated above, find them to be without merit." *Chibuko*, 744 F.3d at 267 (emphasis added).

Thus, because the Second Circuit already ruled on Mr. Chibuko's second claim for relief regarding the obstruction of justice sentencing enhancement, denying it, the Court must follow the mandate rule and deny this claim as well. *Mui*, 614 F.3d at 53-54. In short, Mr. Chibuko's sentencing counsel could not have been ineffective for failing to object to the obstruction of justice sentencing enhancement when the Second Circuit found no fault with the Court applying it.

Moreover, Mr. Chibuko's argument that he was simply "maintain[ing] his version of events as presented at trial when interviewed by the Probation Office," which "did not impede sentencing in any way," [ECF No. 1 at 8], is meritless. Mr. Chibuko lied to the Probation Office when he was interviewed pre-sentencing, maintaining the charade that he was Steven Raymond Buckley, in an apparent attempt to have his sentence reduced or eliminated. That is classic obstruction of justice, and as Mr. Chibuko's cited *Dunnigan* case makes clear, "a defendant's

right to testify does not include a right to commit perjury." *Dunnigan*, 507 U.S. at 96.

Mr. Chibuko's second ineffective assistance of counsel claim is DENIED.

### III. Appellate Counsel's Failure to Object to the Sophisticated Means Sentencing Enhancement

Mr. Chibuko argues that his appellate counsel was ineffective because he failed to argue on appeal that the sophisticated means sentencing enhancement should not have issued. That enhancement was improper, according to Mr. Chibuko, because it was based on Mr. Chibuko "fle[eing] from several jurisdictions while continuing to engage in fraudulent activity, us[ing] several social security numbers, and l[ying] while assuming multiple identities," which were "facts that simply do not meet the standard as being 'sophisticated.'" [ECF No. 1 at 13]. He also notes that he was "so unsophisticated that he attempted to assume the identity of a white U.S. citizen, while he was a black Nigerian citizen," and that he "was so un-sophisticated as to believe that American citizens simply chose their social security number." *Id.* Mr. Chibuko states that courts applying this enhancement normally do so for sophisticated criminal activities such as "the practice of hiding assets through the use of fictitious entities or offshore accounts." *Id.* at 14. Mr. Chibuko argues that in failing to argue the impropriety of the sophisticated means enhancement on appeal, and instead raising "more supported enhancements," Mr. Chibuko's appellate counsel was ineffective.

The Government responds that this ineffective assistance of counsel claim is not properly before this Court because it was raised and denied on appeal; the mandate rule thus dictates that the Court deny it as well. In addition, the

Government argues that the Court did not apply the sophisticated means enhancement. Rather, according to the government, the Court applied the "enhancement for relocation of the fraud scheme." [ECF No. 10 at 13 n.3].

The Court first notes that Mr. Chibuko's argument that his appellate counsel was ineffective for failing to raise Mr. Chibuko's sophisticated means enhancement is meritless because Mr. Chibuko *himself* raised the sophisticated means sentencing enhancement's impropriety on appeal. *See Pro Se* Supplemental Brief of Appellant at 20, *United States v. Chibuko*, No. 12-39, [ECF No. 73] (2d Cir. Feb. 28, 2013):

> **THE DISTRICT COURT ERRED IN APPLYING AN ENHANCEMENT UNDER U.S.S.G. § 2B1.1(b)(10)(C) FOR SOPHISTICATED MEANS.**
> Appellant's alleged offenses were not especially complex when compared with the, way these crimes are usually committed. The commentary to § 2B1.1(b)(1)(C) defines sophisticated means as 'especially complex or especially intricate offense conduct pertaining the execution or concealment of an offense.' § 2B1.1(b)(10)(C) cmt, n. 8. Absolutely no such sophistication was employed here. *See United States v. Cole*, 496 F.3d 188 (2nd Cir. 2007).

*Id.*

Thus, his argument that he deserves relief because his *counsel* did not object to the obstruction of justice sentencing enhancement is a red herring because Mr. Chibuko's appellate counsel could not have been ineffective for failing to raise an issue on appeal that Mr. Chibuko himself raised.

In addition, the Court also agrees with the Government that the mandate rule requires the Court to deny this claim because it was raised and denied on appeal. In his *pro se* supplemental appeal brief, as quoted above, Mr. Chibuko argued that the sophisticated means sentencing enhancement was improperly

applied.  *Id.*  And, as noted, other than the groupability of Mr. Chibuko's claims, all of Mr. Chibuko's issues raised on appeal were denied.  "We have considered <u>all of Chibuko's arguments</u>, both counseled and *pro se*, and except as indicated above, find them to be without merit."  *Chibuko*, 744 F.3d at 267 (emphasis added).

Thus, because the Second Circuit already ruled on Mr. Chibuko's third claim for relief regarding the sophisticated means sentencing enhancement, denying it, the Court must follow the mandate rule and deny this claim as well. *Mui*, 614 F.3d at 53-54.  In short, Mr. Chibuko's appellate counsel could not have been ineffective for failing to object to the sophisticated means sentencing enhancement when the Second Circuit found no fault with applying it.

Moreover, Mr. Chibuko's argument that the sophisticated means sentencing enhancement was improperly applied is meritless because, as the Government argues, the sentencing enhancement applied was not for sophisticated means but was, rather, for relocation of the fraudulent scheme to evade law enforcement.  [ECF No. 10 at 13 n.3].

The Supplemental PSR had the following language: "Specific Offense Characteristics: Because the defendant relocated the fraudulent scheme to evade law enforcement, and because the offense otherwise involved sophisticated means, two levels are added pursuant to §2B1.1(b)(10)."  Supplemental PSR at 2, [ECF No. 106], 3:10-cr-00204 (VLB).  Thus, it is clear that the enhancement was applied primarily because of part A of the associated guideline, which reads that the enhancement applies "If the defendant relocated, or participated in relocating,

a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials," U.S. Sentencing Guidelines Manual § 2B1.1(b)(10)(A) (2011). Part C provides an alternate route to applying the enhancement, namely, if the defendant used "sophisticated means." *Id.* § 2B1.1(b)(10)(C). Here, it was clear that Mr. Chibuko did relocate his fraudulent scheme from California to Massachusetts to Connecticut, each time to evade law enforcement. Thus, application of the enhancement was proper under Part A., and Mr. Chibuko's appellate counsel could not have been ineffective for not raising a challenge it on appeal, because Mr. Chibuko did raise such a challenge on appeal, and doing so would not likely have been successful.

Mr. Chibuko's third ineffective assistance of counsel claim is DENIED.

IV.     **Trial Counsel's Failure to Introduce Documentation Demonstrating that Mr. Chibuko did not Commit Aggravated Identity Theft**

Mr. Chibuko argues that his trial counsel was ineffective because he failed to introduce into evidence a copy of Mr. Chibuko's "Nigerian passport listing his name as 'Stephen Buckley'" and "a 1986 document from Nigeria regarding a declaration of age for the Petitioner." [ECF No. 1 at 18]. This was deficient performance by Mr. Chibuko's trial counsel, according to Mr. Chibuko, because "[t]hese documents indicate that the Petitioner is who he purports to be, and did not engage in a knowing theft of another's identification." *Id.* Thus, "counsel's failure to introduce such evidence rendered his performance below any objective standard of reasonableness" because he "failed to introduce evidence that would have demonstrated [Mr. Chibuko's] innocence." *Id.* Mr. Chibuko argues that

counsel's failure was prejudicial because Mr. Chibuko was as a result "found guilty of a crime that he did not commit." *Id.*

The Government argues that Mr. Chibuko cannot show prejudice because even if his trial counsel refused to offer into evidence the two documents Mr. Chibuko describes, as explained by this Court at sentencing, the evidence at trial that Chibuko was guilty of aggravated identity theft was overwhelming. [ECF No. 10 at 12 n.2].

Even if trial counsel had offered these documents into evidence, the other evidence adduced at trial would have been more than sufficient to overcome their probity and permit a prudent jury to find Mr. Chibuko guilty of aggravated identity theft. This is especially true because the credibility of those documents was easily impeachable. The jury heard unrefuted testimony and saw visual evidence that at the time of his arrest, Mr. Chibuko was in constructive, if not actual, possession of forged identity documents. They also heard testimony he used varying identity documents on a trip to Nigeria, as well as saw the passport he used to enter the country and the different passport he used to leave the country. Mr. Chibuko's trial counsel's allegedly deficient performance could not have been prejudicial to Mr. Chibuko, which is the second requirement under *Strickland.*

Moreover, Mr. Chibuko concedes that he was guilty of aggravated identity theft in his *habeas* Petition. In arguing that the "sophisticated means" sentencing enhancement was improper, Mr. Chibuko argues that evidence of the simplistic nature of his crimes is demonstrated, in part, by him being "so unsophisticated that he attempted to assume the identity of a white U.S. citizen,

while he was a black Nigerian citizen." [ECF No. 1 at 13]. In short, Mr. Chibuko admits *in the instant Petition* that he committed identity theft; thus, his trial counsel could not have been ineffective for not introducing documents that allegedly show that he did not.

Mr. Chibuko misconstrues the import of sophisticated means. It does not mean a brilliantly conceived offense as he assumes. Were that its connotation the enhancement would never be applied because the perpetrator would never be caught. In the same context presented here, the Seventh Circuit explained sophisticated does not mean intelligent. The sophisticated means enhancement applies when there is a greater level of planning or concealment than the usual tax evasion case. *United States v. Kontny*, 238 F.3d 815, 821 (7th Cir. 2001) ("In light of its purpose and context, we think 'sophistication' must refer not to the elegance, the 'class,' the 'style' of the defrauder-the degree to which he approximates Cary Grant-but to the presence of efforts at concealment that go beyond . . . the concealment inherent in tax fraud.") Here, Chibuko's identity theft scheme spanned from Nigeria to California, Massachusetts, Connecticut and back to Nigeria. It involved multiple victims, including a vulnerable victim and impressionable women, as well as state and federal governments, financial institutions, and healthcare employers. It persisted for many years and included immigration fraud, financial fraud, and social security fraud. Its duration, scope and depth was far greater than the typical identity theft offence. Mr. Chibuko repeatedly identified victims, exploited their vulnerabilities, and executed plans to

take advantage of them to conceal his true identity and assume that of others to avoid detection.

Mr. Chibuko's fourth ineffective assistance of counsel claim is DENIED.

V.  **Trial Counsel's Failure to Call Mr. Chibuko to Testify in His Own Defense**

Mr. Chibuko argues that his trial counsel was ineffective because he failed to call Mr. Chibuko to testify in his own defense.  Such testimony would have "created a reasonable doubt in the mind of the jury as to the government theory of the case as to whether Mr. Chibuko knew that the name 'Stephen Buckley' was not his real name since he was also known by that name, and the name Stephen Buckley was recognized in [an] official Nigerian government document."  [ECF No. 7 at 4].

Mr. Chibuko acknowledges that the Second Circuit has followed the lead of other circuits in holding that "absent something in the record suggesting a knowing waiver [of the right to testify], silence alone cannot support an inference of such a waiver."  [ECF No. 12 at 3-4 (quoting *Chung v. United States*, 250 F.3d 79 (2d Cir. 2000))].  Thus, Mr. Chibuko asserts his ineffective assistance claim is not procedurally defaulted.  *Id.*

As an initial matter, the Government argues that this claim is procedurally barred because Mr. Chibuko fails to explain why he did not raise this claim on direct appeal.  [ECF No. 10 at 11].  On this basis alone the claim could be dismissed.  However, another stronger basis exists as well.

Mr. Chibuko knowingly and intelligently waived his right to testify.  *Id.* at 12 n.2 (citing May 23, 2011 Trial Transcript at 3-4).  Mr. Chibuko's decision not to

testify at trial was made after thoughtful deliberation and was his alone. At trial,

the following colloquy occurred:

> THE COURT: Okay. Then is Mr. Chibuko going to testify.
> MR. RICCIO[3]: Your Honor, after meeting with Mr. -- with Defendant over the weekend at Wyatt yesterday, we spoke for three hours. After that consultation, the Defendant has elected not to testify[.]
> THE COURT: Will the Defense be offering any other evidence?
> MR. RICCIO: The Defense will not be offering any other evidence.
> THE COURT: All right.
> MR. MATTEI: And, Your Honor, if I may, I would just request that -- whether it be now or at some recess, that the Court personally canvas the Defendant and make sure that he understands that the decision to testify is his, so that the record is clear that this decision is being voluntarily made by him.
> THE COURT: Mr. Chibuko.
> THE DEFENDANT: Yes, Your Honor?
> THE COURT: Is it your intent not to testify, sir?
> THE DEFENDANT: Yes, Your Honor.
> . . .
> THE COURT: And have you discussed this with your attorney?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you have any questions or concerns about this decision? Do you need more time to consider it?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Are you satisfied with the legal advice you received concerning this decision?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: You understand that you have the right to testify?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And you do understand that if you choose not to it testify, I will instruct the jury that they cannot hold against you, the fact that you did not testify, and assume that you're guilty simply because you didn't testify?
> THE DEFENDANT: Yes, Your Honor.
> MR. MATTEI: Thank you, Your Honor.
> THE COURT: You're welcome.

No. 3:10-cr-00204 (VLB), [ECF No. 121 at 3-5].

---

[3] Attorney Riccio was defense counsel and Attorney Mattei was counsel for the Government.

Thus, it is clear that trial counsel did not fail to call Mr. Chibuko to testify. After being advised of his rights by his attorney, canvased by the court, and after representing to the court he had sufficient time to consider his options, Mr. Chibuko stated on the record he and he alone made the decision not to testify.

Mr. Chibuko's fifth ineffective assistance of counsel claim is DENIED.

VI.  **Sentencing Counsel's Failure to Request a Below-Guidelines Sentence**

Mr. Chibuko argues that his base offense level was 6, and that his loss enhancement of 14, which raised his offense level to 20, caused "a more than three-fold increase" in offense level.  [ECF No. 7 at 6-7].  Mr. Chibuko argues that "where the sentencing commission assigned a rather low base offense level to a crime and then increases it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-guidelines sentence."  *Id.* at 7 (emphasis in original).  Therefore, Mr. Chibuko argues, his sentencing counsel was ineffective for failing to request the Court to consider reducing his sentence to a non-guidelines sentence.  *Id.*

The Government responds that is this claim is procedurally barred because Mr. Chibuko fails to explain why he did not raise this claim on direct appeal.  [ECF No. 10 at 11].  Moreover, the Government argues that "as to his argument regarding a non-guideline sentence, this Court explained that, even if it had imposed a non-guidelines sentence, the court still would have imposed the same sentence and thus [Mr.] Chibuko cannot show prejudice.  *Id.* at 12 n.2.

Mr. Chibuko replies that "[b]ut for counsel's lack of objection and appeal, it is highly unlikely to know whether the district court would have varied

downwardly and applied a non-guideline sentence, especially given cumulative enhancement applied in this case." [ECF No. 12 at 11-13].  The Court agrees with the Government.

First, Mr. Chibuko has not explained what prevented him from arguing on appeal that his sentencing counsel was ineffective by not requesting a non-guideline sentence, especially given that Mr. Chibuko filed two supplemental *pro se* appeal briefs.  *See* No. 12-39, [ECF Nos. 73, 92] (2d Cir.).

Moreover, the Court made clear at sentencing that the reason it was adopting consecutive sentences resulting in Mr. Chibuko's sentence of 168 months' imprisonment was due to the "utterly vile and unthinkable" nature of his crimes involving "persistent deception" and "dishonesty," and involving taking advantage of developmentally disabled victims.[4]  No. 3:10-cr-00204 (VLB), [ECF No. 115 at 37, 40].  Under those circumstances, there is no question that the Court would have denied any request to reduce Mr. Chibuko's sentence by departing downwardly to a below guidelines sentence.  In case there was any doubt the Court made this explicit, explaining that "[t]he Court further notes that even if the Court were to impose a non-guideline sentence, the Court would have imposed the same sentence."  *Id.* at 50.

Thus, it is clear that Mr. Chibuko's sentencing counsel's decision to not request a non-guideline sentence cannot have been ineffective when doing so

---

[4] Although he only assumed the identity of Mr. Buckley, Mr. Chibuko used false identity documents and other credentials to obtain positions for which he was unqualified which required him to care for vulnerable disabled individuals.

would have been utterly futile; his decision resulted in no prejudice to Mr. Chibuko.

Mr. Chibuko's sixth ineffective assistance of counsel claim is DENIED.

<u>Conclusion</u>

There is no need for this Court to conduct a hearing on this habeas petition.  Although courts generally "look with disfavor on summary rejection of a habeas petition," *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir.1990) (quotation omitted), the text of § 2255 provides that the Court need not conduct a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b) (2014); see also *Aiello*, 900 F.2d at 534 (finding no reversible error in the failure to conduct a hearing where the district court had presided over the trial and was therefore "intimately familiar with the detailed factual record" and where petition's "allegations were patently meritless."); *see also Johnson v. Fogg*, 653 F.2d at 753 (holding that district court was not required to provide a hearing to a *pro se* litigant who did not raise issues sufficient to warrant a hearing).  Mr. Chibuko is not entitled to relief on his claims.  Therefore, this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED.  The Court denies a certificate of appealability because jurists of reason would not find this procedural ruling debatable.  See *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  The Court CERTIFIES under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**IT IS SO ORDERED.**

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

**Dated at Hartford, Connecticut: March 9, 2020**